**BATHAEE DUNNE LLP**
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

*Attorneys for Plaintiffs and the*
*Proposed Class*

**CRAVATH, SWAINE & MOORE LLP**
Antony L. Ryan (*pro hac vice*)
aryan@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
wearnhardt@cravath.com
David H. Korn (*pro hac vice*)
dkorn@cravath.com
825 Eighth Avenue
New York, NY 10019-7475
Tel.: (212) 474-1000

**FARELLA BRAUN + MARTEL LLP**
Douglas R. Young (CA 073248)
dyoung@fbm.com
Christopher C. Wheeler (CA 224872)
cwheeler@fbm.com
Daniel A. Contreras (CA 329632)
dcontreras@fbm.com
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Tel.: (415) 954-4400

*Attorneys for Defendant*
*The Walt Disney Company*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHELLE FENDELANDER, et al., | Case No. 5:22-cv-07533-EJD |
| Plaintiffs, | **SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT** |
| v. | |
| THE WALT DISNEY COMPANY, | Hon. Edward J. Davila |
| Defendant. | Hearing Date: July 13, 2023<br>Time:          10:00 a.m. |

1   Pursuant to Federal Rules of Civil Procedure 16 and 26, Civil Local Rule 16-9, the Standing

2   Order for All Judges of the Northern District of California – Contents of Joint Case Management

3   Statement, and the Court's Standing Order for Civil Cases, Plaintiffs Michelle Fendelander, Ronda

4   Lee Haines, Michael Hughes, John Manso, and Jasmine McCormick (collectively, "Plaintiffs") and

5   Defendant The Walt Disney Company ("Disney") respectfully submit this Joint Case Management

6   Statement in advance of the initial case management conference scheduled for July 13, 2023, at

7   10:00 a.m.[1]

8   **Scheduling of Initial Case Management Conference**

9   **Plaintiffs' Position:**

10   Plaintiffs submit that the initial case management conference should go forward as

11   scheduled on July 13, 2023. The *Biddle* and *Fendelander* actions were filed seven months ago

12   (November 18 and 30, 2022, respectively), discovery is open in both actions, and having a case

13   management order in place establishing a discovery plan and setting deadlines for discovery and

14   other case milestones (such as class certification) would promote efficient case management.

15   Plaintiffs recently served their first set of requests for production (twenty-three requests)

16   and first set of interrogatories (a single interrogatory) on Disney, and Disney says it will move for

17   a protective order against responding to those discovery requests. Although Plaintiffs have not seen

18   Disney's discovery motion as it has not yet been filed, based on the motion to dismiss briefing and

19   the contents of Plaintiffs' as-served discovery requests, Plaintiffs do not believe Disney can meet

20   the applicable standard to obtain the relief it says it will seek—a blanket protective order against

21   responding to any of Plaintiffs' discovery requests. In any event, Disney's promised protective

22   order motion is orthogonal to the issue of whether it is premature to have the first case management

23   conference in this now seven-and-a-half month-old action (it clearly is not).

24

25

---

26   [1] Because of the substantial factual and legal overlap between this case and the related case, *Biddle,*

27   *et al. v. The Walt Disney Company*, No. 5:22-cv-07317-EJD, for the convenience of the Court the

28   parties have filed substantively identical submissions on both dockets.

**Defendant's Position:**

Disney has filed substantively identical motions to dismiss both the Biddle and Fendelander actions.  Disney believes those motions should be dispositive of all of Plaintiffs' claims. Previously, Disney stipulated with Plaintiffs that the initial case management conference would be held on or after the hearing on Disney's motions to dismiss, which, at that time, was scheduled for July 13, 2023.  (ECF No. 33.)  As a result, the Court set the initial case management conference for both matters for August 17, 2023, while maintaining the July 13, 2023, date for the motion to dismiss hearing.  (ECF No. 35.)  The Court then advanced the hearing on Disney's motion to dismiss to June 15, 2023, and the initial case management conference to July 13, 2023 (ECF No. 39).

Then, on June 14, 2023, the Court vacated the hearing on Disney's motions to dismiss, and indicated that the hearing would be reset to a later date.  (ECF No. 41.)  That hearing has not yet been rescheduled.  Yet, the initial case management conference for both actions remains scheduled for July 13, 2023, which is roughly 28 days after the previously-scheduled (but vacated) motion to dismiss argument date.

Disney requests that the previously-agreed-to sequence be maintained.  Specifically, Disney submits that the most efficient course is for the joint initial case management conferences to be held after the hearing on the motions to dismiss.  Accordingly, Disney respectfully requests that the joint initial case management conference in Biddle and Fendelander be continued, that a joint conference be held at least 28 days after the date of the hearing on Disney's motions to dismiss, with the parties to file a supplemental joint case management statement 10 days before the initial case management conference.

Further, for the reasons explained below, Disney will move to stay discovery.

1.    **Jurisdiction and Service**

**Plaintiffs' Position:**

Plaintiffs assert that the Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question), 1332 (class action diversity jurisdiction), and 1337(a) (antitrust); and under 15 U.S.C. § 15 (antitrust).

**Defendant's Position:**

Defendants do not contest that the Court has subject-matter jurisdiction over this action.

**2.      Facts**

**Plaintiffs' Position:**

*Biddle* and *Fendelander* are antitrust lawsuits against The Walt Disney Company ("Disney") to remediate and recover for Disney's anticompetitive agreements with direct competitors in the market for streaming live pay television ("SLPTV")—live television streamed over the Internet to paying subscribers. Plaintiffs are subscribers to YouTube TV (*Biddle*) and DirecTV Stream (*Fendelander*), two of the largest providers of live pay television streamed over the Internet. They bring suit under Section 1 of the Sherman Act to, among other things, recover the near doubling of their subscription prices as a result of Disney's anticompetitive agreements with YouTube TV, DirecTV Stream, and other SLPTV providers.

As described in the *Biddle* and *Fendelander* Class Action Complaints, Disney owns, operates, and controls the second-largest SLPTV provider, Hulu, which provides an SLPTV product called Hulu + Live TV. Disney also controls ESPN, the largest cost input into every SLPTV product in the United States. Disney operates these businesses (ESPN and Hulu) as a single economic entity, allowing it to negotiate ***horizontal***, anticompetitive carriage agreements for ESPN and ESPN-related channels. Disney's carriage agreements with its SLPTV competitors contain two terms that provide Disney pricing power over the entire market. First, Disney's carriage agreements contain language requiring that base or lowest-priced bundles offered by SLPTV providers must include ESPN. Second, Disney's carriage agreements include most-favored-nation ("MFN") clauses that put upward price pressure on every rival SLPTV product. Together, these carriage agreement mandates—which now cover all of Disney's leading competitors in the SLPTV Market—allow Disney to use ESPN and Hulu to set a price floor in the SLPTV Market and to inflate prices marketwide by raising the prices of its own products.

Since Disney acquired operational control over Hulu in May 2019, prices across the SLPTV Market, including for YouTube TV and DirecTV Stream, have doubled. This dramatic, marketwide price inflation has been led by Disney's own price hikes for Hulu + Live TV, and has directly

tracked Disney's competitor-by-competitor negotiation of new SLPTV carriage agreements over this time period. As for YouTube TV, controlled by tech giant Alphabet, Inc. ("Google"), Google's carriage agreements with Disney have resulted in a near-100% price increase of YouTube TV's base package, from $35 to $65. For DirecTV Stream, controlled by television giant DirecTV and majority-owned by telecommunications giant AT&T, DirecTV's carriage agreements with Disney have resulted in a near-100% price increase of DirecTV Stream's base package, from $35 to $69.99.

Disney's carriage agreements have had other anticompetitive effects. By increasing the cost of ESPN and forcing ESPN onto base bundles across the entire market, Disney is able to impose higher costs on rivals that it does not itself bear through its Hulu + Live TV product. Disney's agreements also strengthen the "Carriage Streaming Infrastructure Barrier to Entry," meaning the computational infrastructure and critical mass of carriage agreements with TV channel providers necessary for a would-be entrant to successfully compete in the SLPTV Market. Finally, Disney's agreements reduce consumer choice marketwide.

Plaintiffs, on behalf of themselves and classes of YouTube TV (*Biddle*) and DirecTV Stream (*Fendelander*) subscribers from April 1, 2019, to the present, bring claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, based on the above conduct. Plaintiffs and the putative classes seek treble damages for the price overcharges they have experienced due to Disney's anticompetitive conduct. Plaintiffs also seek the following injunctive relief: (1) an injunction preventing Disney from enforcing its anticompetitive carriage agreements; and (2) an injunction requiring segregation or divestiture by Disney of its Hulu subsidiary, or in the alternative, of its business assets relating to Hulu + Live TV.

**Defendant's Position:**

Plaintiffs in the *Biddle* and *Fendelender* actions are subscribers to YouTube TV and DirecTV Stream, two internet-based linear television streaming services. Plaintiffs do not claim to buy anything from Disney or any company affiliated with Disney. Instead, Plaintiffs challenge terms in contracts between YouTube TV and DirecTV Stream, on the one hand, and ESPN Inc. ("ESPN"), a partially-owned Disney subsidiary, on the other, pursuant to which YouTube TV and DirecTV Stream purchase the right to distribute the ESPN network from ESPN. Specifically,

Plaintiffs' claims are about two alleged terms in those contracts: (1) the "Base Term", which Plaintiffs allege requires YouTube TV and DirecTV Stream to include the ESPN network in the "base" package they offer; and (2) most favored nation ("MFN") clauses, which Plaintiffs allege require ESPN to offer YouTube TV and DirecTV Stream pricing terms at least as favorable as the terms ESPN offers to other linear television programming distributors. Plaintiffs' complaint fails to allege any facts that could support a claim against Disney under Section 1 of the Sherman Act.

Plaintiffs did not, and cannot, plead any conduct that is unlawful *per se* because the challenged agreements in this case are vertical. Under the Sherman Act, there is an important distinction between "horizontal" agreements (between competitors at the same level of market structure) and "vertical" agreements (between participants up and down a supply chain, such as businesses that create products and those that distribute them). Vertical agreements generally are not a risk to competition, and therefore are not *per se* unlawful; instead, a plaintiff challenging vertical agreements must plead a claim under the rule of reason. That is the case here because the challenged agreements are terms in vertical contracts: ESPN (as a television network programmer) sells distribution rights to its ESPN network downstream to YouTube TV and DirecTV Stream (as television network program distributors), who then repackage those rights and resell them (with others) further downstream to consumers. The relationship between ESPN and YouTube TV / DirecTV Stream is a producer/distributor relationship, which is vertical.

Although the Complaints include allegations concerning Disney's majority stake in Hulu LLC ("Hulu")—which itself offers a linear television streaming service called Hulu + Live TV— those allegations do nothing to change the vertical nature of the challenged agreements. Plaintiffs do not assert that Hulu in any way has entered into horizontal agreements with other television distributors. Rather, as Plaintiffs themselves assert, other television distributors (such as YouTube TV and DirecTV Stream) with an MFN clause in their contract with ESPN are able to demand the **lowest** prevailing price for the ESPN network, including the price that Hulu + Live TV pays; they are not obligated to pay the highest. Moreover, the fact that the agreements Plaintiffs challenge are vertical is not based on Hulu being a different entity that ESPN. Plaintiffs challenge agreements between an upstream supplier (ESPN) and downstream distributors (vMVPDs). As a legal matter,

such agreements are vertical and would be vertical even if ESPN operated both as the upstream supplier and as a downstream distributor.  *See, e.g.*, *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1481 (9th Cir. 1986)  Therefore, Plaintiffs have no basis to claim a *per se* violation of the Sherman Act.  They must proceed under the rule of reason.  For the following reasons, they fail on that path too.

*First*, Plaintiffs have not pleaded a viable antitrust market in which there has been harm to competition.  Because the allegedly anticompetitive conduct concerns contractual terms for programming rights, the relevant market for any antitrust claim would be the market in which the negotiations for such rights occurs—that is, the market in which TV programmers sell linear network distribution rights to distributors.  Plaintiffs ignore that market entirely and instead reference only the downstream market in which distributors resell linear television streaming subscriptions to consumers.  That is wrong as a matter of law.

*Second*, Plaintiffs have not pleaded an unreasonable restraint of trade. The Ninth Circuit already has rejected challenges to equivalent restraints as ***not*** plausibly anticompetitive.  In *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192 (9th Cir. 2012), the court explained that the inability for consumers to choose which networks they purchase as part of their cable packages is not a harm to competition, even if it means that consumers pay more for unwanted networks, thereby rejecting a claim substantively identical to the challenge to the Base Term that Plaintiffs make here.  *Id.* at 1202.  Likewise, contrary to Plaintiffs' paradoxical assertion that the MFN clauses create "upward price pressure", Plaintiffs' own factual allegations demonstrate that the MFN clauses actually create price ***ceilings***—by forcing ESPN to offer the ***best*** price to distributors with applicable MFN clauses—which ***benefits*** distributors such as YouTube TV and DirecTV Stream to the detriment of ESPN.  Plaintiffs have pleaded no facts plausibly suggesting that the challenged provisions raise prices above competitive levels, nor could they.

*Third*, Plaintiffs lack standing to recover damages because they are "indirect purchasers"— *i.e.*, they do not claim to have purchased anything from the alleged antitrust violator, Disney.

*Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977) (holding that indirect purchasers are not eligible to maintain claims for antitrust damages).

**3.     Legal Issues**

**Plaintiffs' Position:**

The legal issues in dispute include:

- Whether Disney entered into a contract or conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

- Whether a class should be certified under Federal Rule of Civil Procedure 23;

- Whether the members of the class are entitled to treble damages, attorneys' fees, costs, and other monetary relief under the antitrust laws;

- Whether the members of the class are entitled to injunctive relief allowing them to opt out of base bundles with ESPN and related Disney-controlled channels;

- Whether Disney should be enjoined from entering into carriage agreements requiring ESPN and related channels to be included as part of base or minimum SLPTV bundles and packages; and

- Whether an injunction should be entered requiring segregation or divestiture by Disney of its Hulu subsidiary, or in the alternative, of its business assets relating to Hulu + Live TV.

**Defendant's Position:**

Defendant respectfully submits that Plaintiffs have failed to state a claim for relief under Section 1 of the Sherman Act because, *inter alia*, Plaintiffs (i) have not alleged a relevant antitrust market; (ii) have not plausibly alleged any unreasonable restraint of trade; and (iii) as indirect purchasers, lack standing to pursue damages under *Illinois Brick*.

**4.     Motions**

***Motion to Dismiss.*** On January 31, 2023, Disney filed motions to dismiss the Complaints in both *Biddle* and *Fendelander*. Those motions were set for hearing on June 15, 2023, at 9:00 a.m., but on June 14, 2023, this court issued an order vacating the hearing and indicating that it will be reset to a later date.

1      ***Motion for Class Certification.*** Plaintiffs anticipate filing a motion for class certification.

2      **5.      Amendment of Pleadings**

3      **Plaintiffs' Position:**

4      Plaintiffs propose that the deadline to join additional parties or amend the pleadings be set

5      for 90 days from entry of the initial Case Management Order. Plaintiffs do not intend to add any

6      additional parties or amend the pleadings at this time but reserve their right to seek leave to amend

7      in the future on any available basis.

8      **Defendant's Position:**

9      Plaintiffs have failed to state any claims against Disney, and no future amendments can

10     solve the fundamental defects in Plaintiffs' pleadings. Disney therefore opposes any amendments.

11     **6.      Evidence Preservation**

12     The parties certify that they have reviewed this Court's Guidelines Relating to the

13     Discovery of Electronically Stored Information ("ESI Guidelines"), are aware of their obligations,

14     and have taken reasonable steps to preserve potentially relevant evidence. The parties confirm that

15     they have met and conferred concerning these obligations.

16     **7.      Disclosures**

17     **Plaintiffs' Position:**

18     Plaintiffs timely served their Fed. R. Civ. P. 26(a)(1) initial disclosures on March 2, 2023.

19     **Defendant's Position:**

20     As was set forth in the Parties' March 2, 2023 Joint Case Management Statement (ECF

21     No. 34), and as set forth further below, Disney's position has been that no discovery, and no initial

22     disclosures, should be served until after the Court resolves Disney's motions to dismiss.  Any

23     discovery or disclosures in advance of that point are likely to impose unnecessary costs and burdens

24     on the parties and the Court.

25     **8.      Discovery**

26     There is currently a dispute over whether discovery should be stayed.

27

28

To the extent necessary, the parties will confer regarding stipulated electronically stored information (ESI) and protective orders at an appropriate time, and will endeavor to make joint proposals to the Court, if necessary.

**Plaintiffs' Position:**

***Stay of Discovery.*** The Federal Rules do not provide for an automatic stay of discovery due to the pendency of a dispositive motion, although discovery can be stayed (technically, a protective order may issue that shields a moving party from some or all discovery) upon a showing of good cause. In evaluating good cause,

> district courts generally consider two factors to determine the appropriateness of a discovery stay: (1) whether the pending motion is potentially dispositive of the entire case, and (2) whether the pending motion can be decided absent additional discovery. A protective order may issue if the moving party satisfies both prongs. Discovery stays are not automatic, however, and the two-factor test is not satisfied by superficial statements or vague articulations demonstrating nothing more than the traditional burdens of litigation.

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16, 2018) (Davila, J.).

Under this standard, Disney is not entitled to a protective order staying discovery here.[2] The briefing is complete on Disney's motion to dismiss, and what remains of Disney's original arguments for dismissal are fact-bound disputes pertaining to Disney's control of Hulu and ESPN, *see* Dkt. 38 (Disney MTD Reply) at 1 ("Here, of course, the relationships are even more clearly vertical than in the typical case because the supplier (ESPN) is a different company from the downstream affiliate that competes with the supplier's customers (Hulu) and, in fact, is in a vertical relationship with Hulu."), 5 ("in each of these cases, the defendant was a truly unitary entity, without the type of corporate boundaries that separate Disney from ESPN and Hulu here"); *compare id.* at 2 ("Plaintiffs do not allege—and cannot allege—any agreement among the SLPTV

---

[2] Given this district's—and this Court's—express admonition that case management statements are not the place to make arguments, Plaintiffs will keep this brief. If and when Disney actually files a discovery motion, Plaintiffs will oppose.

providers; that is there is no contract or agreement alleged between or among Hulu, DirecTV Stream, and/or YouTube TV.") *with* Dkt. 36 (Plaintiffs' MTD Opp.) at 8 ("When Disney sat down at a table to negotiate an agreement regarding DirecTV Stream products and pricing in September 2019, it did so as the entity that fully and directly controlled—not just owned—DirecTV Stream's competitor Hulu + Live TV. The CAC specifically and plausibly alleges as much . . . . CAC ¶¶ 16, 17, 19, 146-53. In December 2021, when Disney again hunkered down to negotiate an SLPTV agreement, this one implicating the product offerings and prices that would be permitted by the SLPTV market leader, YouTube TV, Disney did so as the entity that owned, operated, and fully, directly controlled the number two competitor in that very market."), and the specific terms of Disney's agreements with SLPTV providers, *see* Dkt. 38 (Disney MTD Reply) at 2 ("neither of the contractual terms Plaintiffs challenge is plausibly anticompetitive. . . . The **facts** alleged in this Complaint demonstrate robust competition" (emphasis in Disney's brief)); *id.* at 12 ("Nothing about the alleged MFN Clauses would prevent Hulu, or any other SLPTV provider, from lowering the price of its SLPTV packages to subscribers.").

A fully-briefed motion to dismiss that is now down to a factual dispute about Disney's control over Hulu and ESPN and what Disney's carriage agreements—and surrounding contract negotiations—actually comprise is precisely what the Court's *Optronic Techs.* test **does not embrace**, given the content of the discovery actually served by Plaintiffs, which is specifically targeted at (1) Disney's dominion and control over Hulu and ESPN, including with respect to carriage agreement and other contractual negotiations, *see* Plaintiffs' Request for Production Nos. 16-20 & 23, and (2) Disney's actual agreements, communications, and contractual arrangements with other SLPTV providers and their corporate parents, *see id.* at 1-15, 21-23. But Disney appears to grudgingly concede as much, spending little ink on why it actually meets the criteria for a discovery stay (it does not), and a lot of ink on the argument that Plaintiffs should have served discovery earlier, prior to Disney's motion to dismiss, or not at all.

Plaintiffs will not belabor all the things inaccurate about Disney's account of the above (it is, in the truest sense of the term, a complete red herring), except to note:

- On January 26, 2023, Plaintiffs stated in an email to Disney about a discovery stay, "no discovery has been served, and Plaintiffs have not yet received, let alone evaluated and responded to, Disney's motion to dismiss. . . . Perhaps we can revisit this after receiving Disney's motion to dismiss."

- On March 2, 2023, Plaintiffs stated in a case management statement on file with the Court, "no discovery has been served, and Plaintiffs have not yet even responded to Disney's motion to dismiss. . . . If, upon receiving discovery requests (if any) from Plaintiffs during pendency of its motion to dismiss, Disney believes these requests are unduly burdensome or otherwise not legally proper, that would be the appropriate time for Disney to move for a protective order . . . ." Dkt. 34 at 7-8.

- On May 12, 2023, briefing closed on Disney's motion to dismiss with a Reply brief, filed by Disney, retreating to factual disputes about Disney's corporate control over Hulu and ESPN, Dkt. 38 at 1-2, 3-6, and the actual terms (and surrounding conduct) of Disney's carriage agreements, *id.* at 2, 6-15.

- On June 28, 2023, Plaintiffs served an initial set of discovery requests focusing specifically on the above-referenced factual disputes.

- Disney has stated it will move for a protective order against responding.

- Plaintiffs will almost certainly oppose.

As the case progresses, Plaintiffs anticipate that they will seek documents and (eventually) testimony from Disney concerning, among other things, the corporate relationships between and operations of various Disney-related entities and business units, including ESPN, Hulu, and ABC Television Network; Disney's carriage agreements with YouTube TV, DirecTV Stream, and other SLPTV providers; the SLPTV Market; barriers to entry (particularly, the Carriage Streaming Infrastructure Barrier to Entry); and the effects of Disney's conduct on competition and on YouTube TV and DirecTV Stream subscribers.

***Proposed Limitations or Modifications of the Discovery Rules.*** Plaintiffs propose a presumptive limit of 50 interrogatories per side, subject to increase for good cause. *See* Fed. R. Civ.

P. 33(a)(1).  Plaintiffs propose a presumptive limit of 25 depositions per side, subject to increase for good cause.  *See* Fed. R. Civ. P. 30(a)(2).

**Defendant's Position:**

*Stay of Discovery.*   On January 26, 2023, Disney informed Plaintiffs that Disney intended to move to stay discovery if Disney and Plaintiffs could not agree on whether discovery should commence prior to a ruling on Disney's motions to dismiss this case and the related *Fendelander* case.  Plaintiffs responded that any such motion to stay would be premature, as Plaintiffs had served no discovery requests and discovery had not commenced.  In the Parties' March 2, 2023 Joint Case Management Statement, Plaintiffs then stated that they opposed a "preemptive discovery stay", arguing that there "is no cause" for any stay motion because "there is no discovery to stay".  (ECF No. 34.)  In reliance on Plaintiffs' assertions, Disney therefore did not move to stay discovery and stipulated with Plaintiffs to schedule an initial case management conference no earlier than the hearing on Disney's motions to dismiss.  (ECF No. 33.).

Then, on June 28, 2023, two days before this Joint Case Management Statement was due to be filed, with no prior warning, Plaintiffs reversed course and served discovery requests on Disney, including an overbroad set of 23 requests for the production of documents.  Whether intentional or not, the timing of Plaintiffs' discovery requests means that Disney's forthcoming motion to stay will not be fully briefed prior to the initial case management conference (if that conference remains scheduled for July 13, 2023).  As a result, Disney sets forth herein a brief explanation of why, it submits, discovery should be stayed.

Disney's motion to dismiss would dispose of this entire case, and no further discovery is needed to resolve Disney's motion to dismiss.  Indeed, it is particularly important that the Court test the legal sufficiency of Plaintiffs' allegations because they challenge agreements of a type that have existed for decades, yet have never been held to be anticompetitive and, in fact, have been found ***not*** to be anticompetitive by the Ninth Circuit..

Courts in this District apply a two-pronged test to determine whether a stay of discovery is appropriate: "(1) will the motion dispose of the entire case (or at least the issue at which discovery is aimed)? and (2) can the motion be decided without further discovery?".  *See Arcell v. Google*

*LLC*, No. 22-cv-02499, 2022 WL 16557600, at *1 (N.D. Cal. Oct. 31, 2022).  Both prongs are met here.

*First*, Disney's motions seek dismissal of Plaintiffs' Complaints in their entirety and there is no reasonable likelihood that Plaintiffs' claims will survive that motion.  The arguments in Disney's motions are based only on the law, and accept all facts in Plaintiffs' Complaints as true.  Plaintiffs challenge Disney's carriage agreements with distributors of television programming that, as Plaintiffs themselves note in their Complaint, have existed in their present form for "***decades***".  (ECF No. 1 ¶ 54.)  Yet these agreements, and their terms that allegedly harm competition, have never been held anticompetitive.  To the contrary, the Ninth Circuit already has held that the type of Base Term that Plaintiffs challenge here is not even plausibly anticompetitive.  Plaintiffs' own allegations demonstrate that MFN clauses create downward (not upward) pressure on prices.  Plaintiffs do not even attempt to define the product market in which ESPN sells its ESPN Network to distributors such as YouTube TV and DirecTV Stream—the area of competition in which the restraints they challenge operate.  And Plaintiffs are indirect purchasers who lack standing to pursue damages under the antitrust laws.  *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728-35, 746-47 (1977).  In short, Plaintiffs' complaints fail at every turn for fundamental, incurable reasons.

*Second*, because Disney's motions assume the well-pleaded allegations in Plaintiffs' Complaints to be true, no discovery need be conducted for the Court to resolve those motions.

*Third*, the unduly heavy burden that this premature discovery would impose on the parties favors a stay.  "The costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  Because it is likely that no claims will remain after the Court's decisions on Disney's motions to dismiss in *Biddle* and *Fendelander*, both fairness and efficiency counsel against discovery at this point.

Indeed, discovery in this matter likely would be significantly more complex and burdensome than in a "typical" antitrust case.  Plaintiffs' 375-paragraph class action complaint is both sprawling and complex, dealing with perhaps millions of subscribers from across the country;

concerning the entire history of the television programming and distribution industries; and addressing complex negotiations and the terms of confidential agreements between ESPN and numerous sophisticated third parties.  Plaintiffs have sought to cast an equally wide and intrusive net during discovery.  Plaintiffs' first set of requests for production demands that Disney produce an expansive set of documents dating back to January 1, 2015, including all communications and agreements between Disney and every vMVPD and all internal Disney communications concerning those agreements.  Moreover, many of the requests are wholly unrelated to the substantive allegations in Plaintiffs' Complaint, including "[a]ll agreements between [Disney] and Google concerning Google Cloud" and all communications with government bodies concerning "[t]he Walt Disney Company's acquisition of 21st Century Fox, Inc."  Plaintiffs' demands will render discovery more burdensome than in even an ordinary antitrust case.  Indeed, Plaintiffs themselves estimate that a trial in this matter would last a month.

Plaintiffs now argue that no stay is appropriate because "Disney has not moved" for one. But that is because, in its previous exchanges with Disney, Plaintiffs took the position that any motion to stay discovery would be premature because no discovery had been served.  Plaintiffs then waited until the eve of this submission to send their discovery requests, without any prior warning or explanation.  When Disney requested a meet and confer, Plaintiffs declined to agree to an extension for Disney to respond to the discovery requests while the Court was considering a forthcoming motion to stay.  Disney respectfully submits that discovery should not proceed until the Court addresses the legal sufficiency of Plaintiffs' claims.

***Proposed Limitations or Modifications of the Discovery Rules.*** It is premature for the Court to consider modifying or extending the rules and limitations on discovery provided in the Federal Rules.  Such limitations/modifications should be addressed only if necessary after the Court resolves Disney's motions to dismiss.  Addressing discovery after the pending motions will allow the parties and the Court to determine the appropriate scope and limitations for discovery, if any.

9.    <u>Class Action</u>

**Plaintiffs' Position:**

This case is a putative class action. Counsel for Plaintiffs have reviewed the Procedural Guidance for Class Action Settlements.

Plaintiffs propose that one or more classes be certified pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4). In *Biddle*, the proposed class is defined as:

> All persons, business associations, entities, and corporations who paid for a YouTube TV monthly subscription from the period beginning April 1, 2019, through the present (the "Class Period").

In *Fendelander*, the proposed class is defined as:

> All persons, business associations, entities, and corporations who paid for a monthly subscription for DirecTV Stream or its predecessors DirecTV Now, AT&T Now, and/or AT&T TV Now, from the period beginning April 1, 2019, through the present (the "Class Period").

Plaintiffs propose to file a motion for class certification by 11 months from the Court's decision on the pending motion to dismiss, as set forth in Plaintiffs' proposed schedule.

**Defendant's Position:**

Disney opposes certification of any classes in the *Biddle* or *Fendelander* action.  It is premature to discuss a schedule for any class certification motion.

### 10.   Related Cases

*Biddle, et al. v. The Walt Disney Company*, No. 5:22-cv-07317-EJD

### 11.   Relief

Plaintiffs seek damages to the maximum extent authorized by law, including treble damages. Plaintiffs also seek injunctive relief as well as attorneys' fees and costs.

Disney opposes any relief.

### 12.   Settlement and ADR

No settlement discussions have taken place. In compliance with ADR L.R. 3-5, the parties discussed ADR at their February 15, 2023 meet-and-confer but agreed that it was premature to settle on an ADR process at this stage. The parties are open to participating in private mediation at an appropriate time. The parties will be prepared to discuss ADR at the initial case management conference.

**13.** **Other References**

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14.** **Narrowing of Issues**

The parties will consider issues that can be narrowed by agreement or by motion, as well as potential means to expedite the presentation of evidence at trial.

**15.** **Expedited Trial Schedule**

The parties do not consent to the Expedited Trial Procedure of General Order No. 64.

**16.** **Scheduling**

**Plaintiffs' Position:**

Plaintiffs propose the following schedule:

| Event | Date |
|---|---|
| Initial Case Management Conference | July 13, 2023, or soonest available date thereafter |
| Deadline to amend pleadings/join other parties | 90 days after entry of initial Case Management Order |
| Deadline for Plaintiffs' class certification expert disclosures | 8 months after order on motion to dismiss (MTD) |
| Deadline for Defendant's class certification expert disclosures | 9 months after MTD order |
| Deadline for Plaintiffs' class certification reply expert disclosures | 10 months after MTD order |
| Deadline to file class certification and class *Daubert* motions | 11 months after MTD order |
| Deadline to file oppositions to class certification and class *Daubert* motions | 12 months after MTD order |
| Deadline to file replies to class certification and class *Daubert* motions | 13 months after MTD order |
| Hearing on class *Daubert* motions | 14 months after MTD order |
| Hearing on motion for class certification | 15 months after MTD order |
| Completion of first ADR session | 16 months after MTD order |
| Deadline to file Joint Trial Setting Conference Statement | 10 days before Trial Setting Conference |

| Event | Date |
|-------|------|
| Trial Setting Conference | Approximately 30 days before close of fact discovery |
| Close of fact discovery | 18 months after MTD order |
| Deadline for Plaintiffs' merits expert disclosures | 19 months after MTD order |
| Deadline for Defendant's merits expert disclosures | 20 months after MTD order |
| Deadline for Plaintiffs' merits reply expert disclosures | 21 months after MTD order |
| Deadline to file merits *Daubert* motions and dispositive motions | 23 months after MTD order |
| Deadline to file oppositions to merits *Daubert* motions and dispositive motions | 25 months after MTD order |
| Deadline to file replies to merits *Daubert* motions and dispositive motions | 26 months after MTD order |
| Hearing on merits *Daubert* motions | Approximately 27 months after MTD order |
| Hearing on dispositive motions | Approximately 28 months after MTD order |
| Final Pretrial Conference | TBD |
| Jury Trial | TBD |

**Defendant's Position:**

As explained herein and in Disney's motion to dismiss, Disney believes the Complaint should be dismissed in its entirety with prejudice, thus obviating the need for a discovery or trial schedule.  Disney submits the following proposed schedule in accordance with the applicable rules but reiterates that the schedule would apply only in the event that any part of the case survives Disney's motion to dismiss (which Disney does not believe should happen).  To promote judicial efficiency and conserve resources in the event Disney's motion to dismiss is granted, Disney proposes scheduling the Initial Case Management Conference in this matter on at date at least 28 days after this Court's hearing on Disney's motion to dismiss.

| Event | Date |
|-------|------|
| Initial Case Management Conference | 28 days after hearing on motion to dismiss (MTD) |
| Deadline for initial disclosures under Fed. R. Civ. P. 26(a)(1) | 21 days after order on MTD |

| Event | Date |
|---|---|
| First date to propound requests for production | 21 days after MTD order |
| Deadline to amend pleadings/join other parties | 90 days after MTD order |
| Deadline for Plaintiffs' class certification expert disclosures | 7 months after MTD order |
| Deadline for Defendant's class certification expert disclosures | 9 months after MTD order |
| Deadline for Plaintiffs' class certification reply expert disclosures | 10 months after MTD order |
| Deadline to file class certification and class *Daubert* motions | 11 months after MTD order |
| Deadline to file oppositions to class certification and class *Daubert* motions | 13 months after MTD order |
| Deadline to file replies to class certification and class *Daubert* motions | 14 months after MTD order |
| Hearing on class *Daubert* motions | 15 months after MTD order |
| Hearing on motion for class certification | 15 months after MTD order |
| Completion of first ADR session | 16 months after MTD order |
| Deadline to file Joint Trial Setting Conference Statement | 10 days before Trial Setting Conference |
| Trial Setting Conference | Approximately 30 days before close of fact discovery |
| Close of fact discovery | 17 months after MTD order |
| Deadline for Plaintiffs' merits expert disclosures | 18 months after MTD order |
| Deadline for Defendant's merits expert disclosures | 20 months after MTD order |
| Deadline for Plaintiffs' merits reply expert disclosures | 21 months after MTD order |
| Deadline to file merits *Daubert* motions and dispositive motions | 23 months after MTD order |
| Deadline to file oppositions to merits *Daubert* motions and dispositive motions | 25 months after MTD order |
| Deadline to file replies to merits *Daubert* motions and dispositive motions | 26 months after MTD order |
| Hearing on merits *Daubert* motions | Approximately 27 months after MTD order |
| Hearing on dispositive motions | Approximately 28 months after MTD order |
| Final Pretrial Conference | TBD |
| Trial | TBD |

### 17. <u>Trial</u>

Plaintiffs request a jury trial and currently estimate the trial will take four weeks.

Disney believes it is premature to discuss the nature of any potential trial prior to resolution of Disney's motions to dismiss.

### 18. <u>Disclosure of Non-Party Interested Entities or Persons</u>

Plaintiffs have filed their certification pursuant to Civil L.R. 3-15; other than the named parties, there are no non-party interested entities or persons to report.

Disney has filed its certification pursuant to Civil L.R. 3-15, which discloses all non-party interested entities or persons.

### 19. <u>Professional Conduct</u>

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### 20. <u>Other Matters</u>

**Plaintiffs' Position:**

***Case Management Conferences.*** Plaintiffs believe that this action would benefit from quarterly case management conferences in person or by Zoom on dates and at times convenient for the Court, with the parties to file a Joint Case Management Statement no fewer than ten (10) days before any such conference per the Court's Standing Order for Civil Cases. *See* Civil L.R. 16-10(c), (d).

***Consolidation.*** Plaintiffs submit that it would promote efficient case management to consolidate the *Biddle* and *Fendelander* cases for all purposes. *See* Fed. R. Civ. P. 42(a)(2). Consolidation would, among other things, allow for streamlined docketing and scheduling, facilitate the sharing of discovery between the cases, and allow for the use of a common protective order as well as common orders regarding discovery of electronically stored information and other discovery-related matters.

**Defendant's Position:**

*Case Management Conferences.* Disney is willing to set forthcoming case management conferences on whatever cadence the Court would find most useful. Disney submits that the appropriate schedule for such conferences will be more easily determined once the Court has resolved Disney's motions to dismiss.

*Consolidation.* Disney agrees with Plaintiffs that it would promote efficient case management to consolidate the *Biddle* and *Fendelander* actions. In light of the similarity in issues across both cases—indeed, the two Complaints are nearly identical apart from the streaming television distributor to which the members of each putative class are alleged to have subscribed— the two actions will benefit from consolidation for all purposes.

*Rule 26(f) Discovery Plan.* To the extent not addressed above, Disney's position on a Rule 26(f) Discovery Plan is as follows:

- <u>Changes to Initial Disclosures</u>:  Disney incorporates its response in ¶ 7.
- <u>Discovery Subjects and Timing</u>:  The subjects on which discovery is necessary, and a reasonable schedule for that discovery, will depend on what claims remain, if any, following the Court's resolution of Disney's motions to dismiss.
- <u>Electronically Stored Information</u>:  As stated above (¶ 8), Disney believes it would be premature to discuss a protocol governing the production of ESI until the Court resolves Disney's pending motions to dismiss.
- <u>Privilege/Work Product Protection</u>:  As stated above (¶ 8), Disney believes it would be premature to discuss a stipulation regarding privilege/work product protection until the Court resolves Disney's pending motions to dismiss.
- <u>Discovery Limitations</u>:  Disney incorporates its response in ¶ 8.
- <u>Any Other Orders</u>:  As stated above (¶ 8), Disney believes it would be premature to discuss other orders that the Court might issue under Rule 26(c) or under Rule 16(b) and (c) until the Court resolves Disney's pending motions to dismiss.

Dated: June 30, 2023

Respectfully submitted,

By:  /s/ Brian J. Dunne
     Brian J. Dunne

By:  /s/ J. Wesley Earnhardt
     J. Wesley Earnhardt

**BATHAEE DUNNE LLP**
Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

*Attorneys for Plaintiffs and the*
*Proposed Class*

**CRAVATH, SWAINE & MOORE LLP**
Antony L. Ryan (*pro hac vice*)
aryan@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
wearnhardt@cravath.com
David H. Korn (*pro hac vice*)
dkorn@cravath.com
825 Eighth Avenue
New York, NY 10019-7475
Tel.: (212) 474-1000

**FARELLA BRAUN + MARTEL LLP**
Douglas R. Young (CA 073248)
dyoung@fbm.com
Christopher C. Wheeler (CA 224872)
cwheeler@fbm.com
Daniel A. Contreras (CA 329632)
dcontreras@fbm.com
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Tel.: (415) 954-4400

*Attorneys for Defendant*
*The Walt Disney Company*

## **FILER ATTESTATION**

I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: June 30, 2023

By:  /s/ Christopher C. Wheeler
     Christopher C. Wheeler